**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KENYOCK WRIGHT, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 13-5589 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| Defendant. | : | |

**March  29, 2016**                                                    **Anita B. Brody, J.**

**MEMORANDUM**

Defendant City of Philadelphia ("the City") moves for summary judgment (ECF No. 16) on all claims brought by Plaintiff Kenyock Wright. For the reasons stated below, I will grant the City's motion.

## I.  BACKGROUND[1]

On July 6, 2011, police officers stopped Kenyock Wright on the corner of 13th Street and Huntington Street in Philadelphia. Wright, who is paraplegic, was in a wheelchair. The officers questioned Wright and then flipped him out of his wheelchair. They handcuffed him and dragged him into a police wagon, and did not return him to his wheelchair until he was at the police station. He was held at the police station for some time before being released; no charges were filed against him. Wright suffered injuries to his hand, wrist, back, and shoulder as a result of this incident.

Wright brought suit against the City, but not against the individual officers, for false

---

[1] The facts are recited in the light most favorable to Wright, the non-moving party. Where facts are disputed, Wright's account taken as true for the purposes of this motion.  *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (noting that at summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor" (alteration in original) (internal quotation marks omitted)).

imprisonment and assault under federal and Pennsylvania law. The City now moves for summary judgment on all claims.

## II.    DISCUSSION

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," after which the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2]

### A.    Federal Claims

Wright brings his federal claims under 42 U.S.C. § 1983. He alleges that the City, "through its agents, servants and employees acting within the scope of their employment, under the color of state law, and pursuant to the customs, policies, and practices of the City of Philadelphia Police Department, intentionally caused" him to be assaulted[3] and falsely imprisoned, in violation of the Fourth Amendment to the United States Constitution. Civil Action Compl., ECF No. 1    ¶ 19. In addition, he claims that the City has "systematically fail[ed] to properly train, supervise and discipline police officers . . . regarding constitutional restraints on the police power to assault and falsely imprison

---

[2] The City argues that Wright has "produced no evidence by way of affidavit, declaration, verified answers to interrogatories, or admissions that a named defendant unlawfully seized and used excessive force" against him. Def.'s Reply Mem., ECF No. 18, at 6. While Wright did not initially verify his state-court complaint, he subsequently filed a praecipe to substitute a verification with his complaint. This praecipe was included in the record transferred to this Court by the Court of Common Pleas for Philadelphia County. A verified complaint is appropriate evidence at summary judgment to the extent that the allegations in the complaint are based on personal knowledge. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.").

[3] Although Wright characterizes this federal claim as one for "assault," based on the allegations in the complaint, I will treat it as an excessive force claim.

[disabled] individuals without probable cause." *Id.* ¶ 26.

42 U.S.C. § 1983 imposes liability on those who violate an individual's federal rights while acting under color of state law. It is well-established, however, that a municipality cannot be held liable under § 1983 for the constitutional violations of its employees under a theory of respondeat superior. *See Carswell v. Borough of Hampstead*, 381 F.3d 235, 244 (3d Cir. 2004) ("A municipality cannot be responsible for damages under section 1983 on a vicarious liability theory . . . ." (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). Thus, to the extent that Wright seeks to hold the City vicariously accountable for its police officers' actions, his claim fails as a matter of law.

The City may "be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Municipal liability attaches when the "execution of a government's policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Custom requires "that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S.

51, 61 (2011). A municipality's failure to train its employees will result in liability only if this dereliction reflects "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton*, 489 U.S. at 388. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. Nevertheless, in rare cases, "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Canton*, 489 U.S. at 390 n.10) (internal quotation marks omitted). In those cases, liability depends on whether the risk of a constitutional violation is a "highly predictable consequence" of the employee's lack of training. *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997).

Wright alleges that the City had "customs, policies, and practices" that sanctioned the false imprisonment of, and use of excessive force against, disabled individuals, but he has failed to identify any official policy or well-settled custom that authorized police officers to engage in such behavior. With respect to his failure-to-train claim, Wright does not point to a pattern of constitutional violations by police officers against disabled individuals. Instead, he relies solely on the City of Philadelphia Police Department's 2014 promulgation of a memorandum governing the transportation of disabled prisoners ("the Memorandum"). *See* Pl.'s Answer to Mot. for Summ. J., ECF No. 17, Ex. E. He argues that the City was deliberately indifferent because "there was no policy in existence prior to this time and accordingly there is an issue of fact as to whether [City police officers] were properly trained." Pl.'s Sur-Reply, ECF No. 19, at 7.

The Memorandum does not support Wright's allegation that the City failed to

4

train its officers regarding false imprisonment because it only addresses the transportation

of disabled individuals, and not the level of suspicion needed to detain them.[4] Nor does

the promulgation of the Memorandum in 2014 establish the City's deliberate indifference

to police officers' use of force against disabled individuals in 2011. At summary

judgment, the Court may only consider admissible evidence. *See Arnold Pontiac-GMC,*

*Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 n.3 (3d Cir. 1987) ("Summary judgment, of

course, looks only to admissible evidence."). Under Federal Rule of Evidence 407,

evidence of subsequent remedial measures is not admissible to prove culpable conduct.

*See* Fed. R. Evid. 407. The Memorandum—which constitutes a remedial measure

designed to address the transportation of wheelchair-bound individuals—may be relevant

to show the absence of a policy prior to 2014, but it is inadmissible to prove that the City

was deliberately indifferent for failing to enact a policy sooner. *See, e.g.*, *Conn v. City of*

*Reno*, 591 F.3d 1081, 1104 n.7 (9th Cir. 2009) (stating, in a *Monell* claim, that "evidence

of the new policy is admissible solely as evidence of the absence of an earlier policy and

---

[4] The Memorandum reaffirms the City's commitment "to ensuring that prisoners requiring a wheelchair are transported in a safe manner." Pl.'s Answer to Mot. for Summ. J., ECF No. 17, Ex. E, at 1. It requires police officers to "exercise care when transporting all disabled persons" and establishes that "[n]on-ambulatory disabled prisoners (those requiring the use of a wheelchair) will be transported by [a] Prisoner Disabled-Accessible Van (PDAV) in most circumstances." *Id.* Specifically, the Memorandum states:

1. Members will not lift or remove a person from a wheelchair unless that person has requested assistance in doing so. Members will not lift a wheelchair off the ground by hand while it is occupied, except in incidents where life threatening circumstances exist.

2. The fact that an arrestee is physically disabled does not itself preclude the use of a restraining device . . . . However, handcuffing an arrestee to a wheelchair is prohibited.

*Id.* at 2. Further, police officers are required to "request the approval of a supervisor when it has been determined that a non-ambulatory . . . disabled prisoner is in need of special transportation." *Id.* at 3. If the supervisor determines "that the prisoner is unable to walk under his or her own power and is confined to a wheelchair, Police Radio will be contacted to dispatch the PDAV." *Id.*

not for the purpose of proving negligence or culpable conduct of any kind"), *vacated on other grounds*, 563 U.S. 915 (2011); *Duran v. Merline*, 923 F. Supp. 2d 702, 730 n.19 (D.N.J. 2013) (noting that a doctor's subsequent referral of the plaintiff for medical treatment was inadmissible under Rule 407 to prove that the healthcare provider was deliberately indifferent); *Cohen v. Dist. of Columbia*, 744 F. Supp. 2d 236, 252 (D.D.C. 2010) (finding that evidence that the defendant introduced new policies was inadmissible, under Rule 407, to demonstrate that the defendant previously lacked sufficient policies).

Besides the Memorandum, Wright has presented no other evidence indicating that the City failed to properly train its officers regarding their authority to detain and use force against disabled individuals. In contrast, the City has submitted police training manuals that specifically address how police should interact with disabled citizens. *See, e.g.*, Def.'s Reply Br., ECF No. 18, Ex. B, at 11 ("Recruits will recognize that people with disabilities may require additional services or equipment in order to ensure fair and reasonably equal treatment."); *id.*, Ex. C, at 14 ("Recruits will recognize appropriate ways to interact and communicate with people with various disabilities."). Pursuant to these manuals, police recruits are informed about the relevant statutes governing their interactions with disabled individuals, including the Americans with Disabilities Act and § 1983, and the consequences of violating these laws. *See id.*, Ex. C, at 16-19. Thus, based on the admissible record evidence, Wright has failed to establish a genuine issue of material fact as to whether the City failed to train its police officers.

In short, Wright has failed to make an adequate showing to withstand summary judgment on his federal claims.

B.  State Law Claims

Wright also brings claims for false imprisonment and assault under Pennsylvania

common law. *See* Civil Action Compl., ¶¶ 20-22.[5]

In Pennsylvania, the Political Subdivision Tort Claims Act ("PSTCA") provides that "no local agency shall be liable for any damages on account of any injury to a person or property" unless the injury was "caused by the *negligent* acts of the local agency or an employee thereof" and the negligence falls within one of the PSTCA's eight enumerated exceptions. 42 Pa. Cons. Stat. Ann. §§ 8541, 8542(a)(2) (emphasis added). The statute specifies that "'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice, or willful misconduct." *Id.* § 8542(a)(2). "For purposes of the Tort Claims Act, 'willful misconduct' is synonymous with the term 'intentional tort.'" *Kuzel v. Krause*, 658 A.2d 856, 859 (Pa. Commw. Ct. 1995).

Both false imprisonment and assault are *intentional* torts under Pennsylvania law. *See Renk v. City of Philadelphia*, 641 A.2d 289, 293 (Pa. 1994) ("Assault is an intentional attempt by force to do an injury to the person of another . . . ." (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. 1950)) (internal quotation marks omitted)); *Gagliardi v. Lynn*, 285 A.2d 109, 111 n.2 (Pa. 1971) (stating that false imprisonment occurs when an individual "acts intending to confine [an]other" (quoting Restatement (Second) of Torts § 35) (internal quotation marks omitted)). As such, neither tort qualifies as a "negligent act" under the PSTCA, and the City is immune from liability for its police officers' actions. *See, e.g.*, *Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *2 (E.D. Pa. Sept. 23, 2015) (holding that the PSTCA prevented the plaintiff "from bringing

---

[5] Wright initially also brought a claim for monetary relief under Article I, § 8 of the Pennsylvania Constitution. He has since withdrawn this claim because Pennsylvania does not recognize a private right to monetary relief under Article I, § 8. Pl.'s Answ. To Def.'s Mot. Summ. J., ECF No. 17, at 5; *see Jones v. City of Philadelphia*, 890 A.2d 1188 (Pa. Commw. Ct. 2006); *see also Mazzarella v. Brady*, No. 14-5654, 2016 WL 75041, at *3 (E.D. Pa. Jan. 7, 2016).

state law tort claims for false imprisonment against the City"); *Agresta v. City of Philadelphia*, 694 F. Supp. 117, 123 (E.D. Pa. 1988) (holding that the City was immune from plaintiff's state-law false imprisonment and assault claims under the PSTCA).

Therefore, Wright's state-law false imprisonment and assault claims against the City fail.

**III.    CONCLUSION**

The City has carried its initial burden at summary judgment, and Wright has failed to "make a showing sufficient to establish the existence of [every] element" on which he will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Thus, the City is entitled to summary judgment on all claims.

s/Anita B. Brody

_____
ANITA B. BRODY, J.